WILLIAM E. UPTEGROVE and JEROME P. UPTEGROVE, Respondents, *v.* WILLIAM O. SCHWARZWAELDER and Others, Appellants.

*Change of the principal place of business of a corporation — resolutions of its stockholders and directors directing the change, not filed, relieve the latter from liability where an annual report is filed in the county to which it is changed.*

Where, in 1895, the principal place of business of a corporation, pursuant to resolutions of its stockholders and directors, is changed from the county stated in its certificate of incorporation to a different county, but no certificate to that effect is filed in either county, the subsequent filing of the annual report of the corporation in the office of the clerk of the county to which its principal place of business has been so changed, and in which its

business is in fact carried on, and in the office of the Secretary of State, constitutes a substantial compliance with section 30 of the Stock Corporation Law, as amended by chapter 688 of the Laws of 1892, which provides that such report shall be filed in the office of the Secretary of State and in the office of the county clerk of the county where the principal business office of the corporation may be located, and imposes a personal liability upon the directors of the corporation if the report is not so filed.

*Semble*, that the provision of the Business Corporation Law (Laws of 1892, chap. 691, § 2), that the certificate of incorporation of a corporation organized thereunder shall state the "location of its principal business office," does not preclude the corporation from thereafter changing its location, or require that the place of business designated in the certificate shall be regarded as its principal place of business.

PATTERSON and O'BRIEN, JJ., dissented.

APPEAL by the defendants, William O. Schwarzwaelder and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 1st day of July, 1899, upon the decision of the court rendered after a trial before the court without a jury at the New York Trial Term.

*Almet R. Latson*, for the appellants.

*D. M. Porter*, for the respondents.

INGRAHAM, J.:

The action is brought to recover from the defendants, directors of a domestic corporation, an indebtedness of the corporation because of a failure of the corporation to file a report in the office of the clerk of the county of Ulster. The action was tried by the court without a jury. This appeal was heard upon the judgment roll, no case having been made, and the only question is whether upon the facts found by the court below the plaintiffs are entitled to judgment. The court found that, during the whole of the year 1896 and including the 30th of January, 1897, William Schwarzwaelder & Company was a domestic stock corporation organized under and pursuant to the laws of the State of New York, and was then and there neither a moneyed nor a railroad corporation, and was not then and there doing business without the United States, and that the defendants were directors of the said corporation; that the certifi-

cate of incorporation of the said corporation which was filed on May 9, 1893, designated Chichester, Ulster county, in the State of New York, as the location of its principal business office, which is the only certificate filed designating its principal business office; that the said corporation did not, at any time during the year 1896, file an annual report as of the 1st of January, 1896, in the office of the clerk of Ulster county; nor did it at any time prior to the 30th of January, 1897, file an annual report as of the 1st of January, 1897, in the office of the clerk of Ulster county; nor did the defendants, or either of them, make a certificate in lieu of such annual report at any times during the years 1896 and 1897, and file the same in the office of the Secretary of State of New York.

By section 30 of the Stock Corporation Law (Chap. 688 of the Laws of 1892, in force during the years 1896 and 1897) it is provided that every stock corporation, except moneyed and railroad corporations, shall annually, during the month of January, or, if doing business without the United States, before the first day of May, make a report as of the first day of January, which report shall be signed by a majority of its directors and duly verified and filed in the office of the Secretary of State and in the office of the county clerk of the county where its principal business office may be located. " If such report is not so made and filed, all the directors of the corporation shall jointly and severally be personally liable for all the debts of the corporation then existing, and for all contracted before such report shall be made."

It was also found by the court that in the month of July, 1895, all of the stockholders of the corporation duly met at the office of their counsel in the city of New York and unanimously adopted a resolution substantially as follows: " The board of directors are hereby authorized and directed to change the principal business office of this corporation from Chichester, Ulster county, to the city and county of New York;" and that thereafter and upon the same day all of the directors of the said corporation, William Schwarzwaelder & Company, duly met at the same place and unanimously adopted a resolution substantially as follows: " The principal business office of this corporation is hereby changed from Chichester, Ulster county, to the city and county of New York," but that no certificate to that effect was filed either in Ulster county or in New York county;

that, "leaving out of consideration any presumption or estoppel due to the contents and filing of the certificate of incorporation of William Schwarzwaelder & Company, that at the time of the adoption of the said resolutions, and at all times thereafter and during the month of January, 1896, the business of the said corporation William Schwarzwaelder & Company was principally carried on in the city and county of New York, at which place, as matter of fact, the principal business office and place of business of the said corporation was located."

It then appears as a fact that the principal business office of the corporation was located in the city of New York; its principal business was there carried on, and that the corporation by a vote of its stockholders and directors had declared that its principal business office should be there located. The court also found that the directors of the said corporation made its annual report in due form, as of the 1st day of January, 1896, and filed the same in the office of the clerk of the city and county of New York on the 29th day of January, 1896, and in the office of the Secretary of State of New York on the 31st day of January, 1896; that said report complied with the law and was signed by a majority of the directors of the corporation and was verified by the oath of its vice-president and treasurer.

We are thus presented with the question whether or not the filing of this report with the Secretary of State and in the office of the clerk of the city and county of New York was a compliance with section 30 of the Stock Corporation Law before referred to. The particular statute under which this corporation was incorporated is not specified in the pleading or in the decision. The Business Corporations Law (§ 2, chap. 691, Laws of 1892) provides that the certificate of incorporation of a corporation organized under that act shall contain the "location of its principal business office." If we assume that the corporation was incorporated under the Business Corporations Law we have this provision, that the certificate of incorporation shall contain "the location of its principal business office." There is nothing in this act, nor is there any provision of law to which our attention has been called, that prohibits a corporation from changing the location of its business office, or which requires that the place at which the certificate of incorporation stated that its business was to be transacted should

be considered its principal place of business, notwithstanding any change that, as a matter of fact, should take place. There is no prohibition as to an actual change of the locality at which it should transact the principal part of its business. If it became necessary or convenient for the corporation to change its principal business office from the county designated in the certificate to some other county because of the fact that the principal part of its business is transacted in the latter county, and such a change was actually effected, there is no express statutory provision which makes the locality at which the corporation, as a fact, does no business, the place where the principal business office of the corporation must be located. Where a corporation does business in two counties, one of which has been designated in its certificate of incorporation as the location of its principal business office, and there has been no official change as to the locality of its business office, it has been held that the principal place of business remains at the place designated in the certificate of incorporation. (*People ex rel. Knick. Press* v. *Barker*, 87 Hun, 342; *Western Transportation Co.* v. *Scheu*, 19 N. Y. 410.) What was said in those cases, however, related to the domicile of the corporation for the purpose of taxation, and there was no evidence that the corporation had, by any corporate act, or as a fact, changed its principal place of business.

We have presented in this case an entirely different condition. The plaintiffs here seek to enforce a penalty imposed upon these defendants, as trustees of this corporation, for a failure of the corporation to file a report. A statute imposing a penalty must be strictly construed. " Its scope should not be enlarged by construction or implication, and the courts should not impose the penalty, except in cases where the plain language of the section requires it." (*Whitaker* v. *Masterton*, 106 N. Y. 280.) The provision of section 30 of the Stock Corporation Law, now under consideration, does not specifically refer to the business office named in the certificate of incorporation, but requires that the certificate must be filed in the office of the county clerk of the county where the principal business office of the corporation may then be located. A fair construction of this statute would be that it referred to the business office of the corporation as a fact, and not to a business office that existed because of a presumption that arose in conse-

quence of the insertion of a locality in the certificate of incorporation. It was found as a fact that this corporation, by a vote of its stockholders and directors, changed its principal business office to the city of New York, and, as a fact, that from that time forth, its principal business office was there located. There is nothing in the statute regulating corporations which prohibits such official action on behalf of the corporation. The corporation, acting through its stockholders and directors, as a matter of fact changed the place of its principal business office from Ulster county to New York. It was not prohibited from making such a change, and I can see no reason why such action should be held to be illegal or ineffectual to consummate a change which, as a matter of fact, had taken place. That being so, the statute then required the corporation to file its annual report with the clerk of the city and county of New York and with the Secretary of State, and that obligation was duly complied with. There is no question but that these stockholders and directors acted in good faith, both in making the change and in subsequently filing the report as provided by law ; and it would seem to be a harsh rule to impose upon these directors a liability when they complied with the statute according to its terms and filed their report at the locality where, as a matter of fact, their principal business office was located, because in their certificate of incorporation filed years before, and before the corporation was organized and the necessities of the business of the corporation were understood, it had designated a different locality as that in which its principal office should be located. The power of a corporation to actually change its place of business from one portion of the State to another has never been questioned; and the general principle that a corporation has, under the general powers granted to it, all incidental powers necessary to the proper transaction of its business, not expressly prohibited by statute, has been recognized by repeated adjudications of the courts of the State, and I can see no reason why an act of the corporation in thus changing its principal business office was invalid.

It may also be said that the principle upon which the case of *Wallace* v. *Walsh* (125 N. Y. 33) was decided is equally applicable to the case now under consideration. In that case the corporation attempted to reduce the number of its trustees below that fixed by its

certificate of incorporation, but, as was claimed by the plaintiff, failed to file the necessary certificate, and it was contended that, consequently, the report was not signed by the number of trustees which would constitute a majority of those legally authorized. It was held, however, that as the report was signed by a majority of the *de facto* trustees, the statute was complied with, and Chief Justice Ruger said: "The purpose of the provisions of the statute is to inform the public and those interested in the affairs of the company, of its financial standing and condition from time to time. * * * And when such information has been published in good faith in the manner and form pointed out by the statute, the trustees have done all that was in their power to comply with the provisions of the statute, and to avoid the incurrence of a penalty for the non-performance of the duty imposed. When a board of trustees, in fact authorized by the corporation, and having possession of its property and franchises, and undisputed control in the management of its affairs, has filed and published within the time limited the report required by the statute, certified by a majority of such board, and verified by the president, it has, we think, complied with the letter and spirit of the law. It is not competent, we think, in such proceedings as this, for the creditors to show, with a view of creating a penalty or forfeiture, that some of the acting trustees were not duly elected, or for some reason, were disqualified from acting as such trustees, or to claim by reason of a non-performance or an irregularity in the performance of some prior duty enjoined upon stockholders, that an acting board of trustees was not, in fact, a board authorized to perform the general duties required of them as agents of the corporation;" that in an action of this character the plaintiff could not question the validity of an act of the corporation with a view of determining whether such action was in conformity with the law controlling the corporation. From this it would seem that the validity of the action of this corporation in changing its principal business office could not be inquired into in this action.

The position taken by the plaintiffs is extremely technical and, if sustained, would impose upon these defendants a severe penalty because they misapprehended the power of the corporation in relation to the establishment of its principal business office for the transaction of its business. That there was not an intentional viola-

tion of the statute is clear, and I do not think that we are required to hold that there was a technical violation which would impose a penalty upon the defendants.

I think that the judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., concurred; PATTERSON and O'BRIEN, JJ., dissented.

McLAUGHLIN, J. (concurring):

I concur in the result reached by Mr. Justice INGRAHAM, but not upon all of the grounds assigned by him.

The case comes before us upon the judgment roll alone, and in disposing of the question presented we are of course bound by the findings of fact as made by the trial court. The trial court found as a fact that in the month of July, 1895, at a meeting duly called, at which *all* of the stockholders were present, a resolution was unanimously passed authorizing and *directing* the board of directors to change the principal business office of the corporation from Chichester, Ulster county, to the city and county of New York, and that, in pursuance of such resolution, the board of directors on the same day, at a meeting duly called, unanimously passed a resolution making the change; that from the month of July, 1895, to and including the month of January, 1898, the principal business office of the corporation was in fact located in the city and county of New York, and that within the time provided by statute the defendants, as directors, made as of the 1st day of January, 1896, the annual report required by statute, and filed the same in the office of the clerk of the city and county of New York, and also in the office of the Secretary of State.

It is unnecessary for us to pass upon or determine how or in what way the principal business office could have been legally changed. All that we are called upon to decide in this case, and all that it is necessary to decide, is that under the findings of fact as made by the trial court the defendants were not liable. Under the findings the change is conclusive, and neither the manner of making it nor the legality of the procedure taken can be inquired into. (*Wallace* v. *Walsh*, 125 N. Y. 28.)

The directors are made liable for the debts of a corporation, not

because they have contracted to pay them or have agreed to assume the obligations of the corporation, but solely as a penalty for failure to comply with the provisions of the statute. The rule is well settled that the provisions of a penal statute will not be extended beyond the strict letter of it, either to afford relief to one seeking to take advantage of its provisions, or to bring a case within its meaning which is not clearly embraced both within the letter and spirit of it. (*Wallace* v. *Walsh, supra; Bonnell* v. *Griswold,* 80 N. Y. 128.)

In *Wallace* v. *Walsh* (*supra*) the stockholders of a corporation voted to reduce the number of trustees from twelve to nine, but no certificate of that fact was filed, as required by statute. After this attempted change only nine trustees were elected, and reports of the corporation thereafter made were signed by less than a majority of twelve. It was there claimed, for that reason, that a report had not been made as required by law, and that the trustees were liable for the debts of the corporation. The plaintiff had a judgment, which was reversed by the late General Term, and what the Court of Appeals said in affirming the reversal is quite applicable to the question here presented. Ruger, Ch. J., in delivering the opinion of the court, said : " It cannot, we think, be doubted but that the proceedings referred to, concurred in by everyone having an interest in the corporation or its affairs, effected a practical reduction of the number of its trustees and constituted the nine thereafter elected a *de jure,* as well as a *de facto* board, entitled to act for the corporation in transacting its business until some party whose interests were affected should raise the question in a direct proceeding to question the exercise of such authority. (*People* v. *N. Y. & M. B. R. Co.,* 84 N. Y. 566.) Neither the company nor its trustees or stockholders could have been heard to allege in a collateral proceeding the invalidity of their action in reducing such board, or its want of authority to administer the general affairs of the corporation. Whatever might have been the effect upon the corporation of a direct proceeding by the Attorney-General, or otherwise, to test the legality of their action in reducing such number, or by doing business with an insufficient or defective board, we think such action could not collaterally be assailed and tried in a proceeding wherein the question was only incidentally involved."

I am of the opinion that the conclusion reached by the trial court, that the defendants were liable, is not sustained by the findings of fact, and for that reason the judgment should be reversed and a new trial ordered.

O'Brien, J. (dissenting):

Upon the facts the court below found "leaving out of consideration any presumption or estoppel due to the contents and filing of the certificate of incorporation of William Schwarzwaelder & Company, that, at the time of the adoption of the said resolutions, and at all times thereafter and during the month of January, 1896, the business of the said corporation, William Schwarzwaelder & Company, was principally carried on in the city and county of New York, at which place, as matter of fact, the principal business office and place of business of the said corporation was located; but during its entire corporate existence the said corporation, William Schwarzwaelder & Company, had a factory in Chichester, in said county of Ulster, where it employed over 100 hands to manufacture merchandise to sell in New York county. This finding is subordinate to finding VI, if any way inconsistent with it." The finding VI is as follows: "That the certificate of incorporation of William Schwarzwaelder & Company, which was filed the 9th day of May, 1893, designated Chichester, Ulster county, in the State of New York, as the location of its principal business office, which is the only certificate filed designating its principal business office."

It is conceded that one of the legal requirements in the filing of the articles of incorporation is that the corporation should therein state "the location of its principal business office" (Laws of 1892, chap. 691, § 2). By section 30 of the Stock Corporation Law (Chap. 688, Laws of 1892), it is provided that reports showing the financial condition of a corporation shall be "filed in the office of the secretary of state and in the office of the county clerk of the county where its principal business office may be located." According to Mr. Justice Ingraham, "a fair construction of this statute would be that it referred to the business office of the corporation as a fact, and not to a business office that existed because of a presumption that arose in consequence of the insertion of a locality in the certificate of incorporation."

This is another way of saying that the business office of the corporation was not to be determined by the statement in the certificate filed, but that it was to be resolved by consideration of where the principal business was transacted, and where, in point of fact, the principal business office was located. This of course, in every instance, would make the question determinable by the opinion of the directors and others interested as to the extent and amount of business done by the corporation at any particular place, and in the event of dispute the question would resolve itself into one of fact.

I cannot assent to this construction of the statute which seems to me in conflict, not only with its language, but also with the decisions which have construed similar provisions in other statutes. The question which should control as between the place designated in the certificate of incorporation and the place where, as a matter of fact, the principal business office of the company is located, has arisen frequently in tax cases, and, so far as my attention has been directed to them, they have always been decided in one way, in favor of the place designated in the certificate of incorporation; and the reasoning, it will be found, is equally applicable upon the question as to the liability of directors for failure to file a report as upon the status of a corporation for the purpose of taxation.

Thus, in *The Western Transportation Company* v. *Scheu* (19 N. Y. 408) it was held that where an act required the designation in the certificate of incorporation of the place in which the principal office for the managing the affairs of the corporation was situated, the certificate is conclusive as to the location therein designated. And in the opinion of SELDEN, J., in that case, it is said : " Unless the Legislature intended that the certificate should be conclusive as to the location of the principal office, it is difficult to see any adequate motive for requiring the statement to be made. It is in no manner essential to the existence of a corporation that the place of its principal office should be fixed, or even that it should have any such office. We can, however, see obvious reasons why it is expedient that corporations should be deemed to have a location for certain purposes; among which is that of taxation; and that this should be definite and certain, and not subject to fluctuation or doubt. When the question is left open to parol proof serious difficulties and embarrassments must often arise. What makes the

office of a corporation its principal office? Is it the residence of its officers, or does it depend upon the amount of the business done or the number of clerks kept at a particular office? * * * To avoid disputes upon the subject was, I apprehend, one motive for requiring the location to be fixed by the certificate. * * * The object of the Legislature in requiring these corporations to designate the location of their principal office in the certificate filed must have been to produce that certainty on the subject, which could not otherwise be attained, and that the provision did not originate in any supposed necessity for having the 'principal office' and the place of the principal business of the corporation identical."

And in *Oswego Starch Factory* v. *Dolloway* (21 N. Y. 449) Judge Denio, in writing the opinion, says (p. 454): "The location established by the certificate could not be changed at the pleasure of the directors or trustees, any more than the corporate name, the period of existence, or the objects for which the company was formed or the amount of its capital stock. All these particulars, required to be stated in the certificate, became portions of the legal constitution of the corporation." (See, also, *Union Steamboat Company* v. *City of Buffalo*, 82 N. Y. 351; *People ex rel. Knickerbocker Press Co.* v. *Barker et al.*, 87 Hun, 341; affd., 147 N. Y. 715.)

As said by Judge Follett in writing the opinion of the General Term in *People ex rel. Knickerbocker Press Co.* v. *Barker* (*supra*): "The policy of this State is to require corporations organized under its laws to have a fixed residence or domicile which is deemed to be where it has its principal office or principal place of business. * * * In case the statute under which a corporation is organized requires that its principal place of business, or its principal office, be designated in its certificate of organization, the statement is as against the corporation conclusive evidence of its residence, unless its residence has been changed pursuant to some statute."

The law thus established as to the conclusiveness of the statement of the certificate in no way hampers or prevents the corporation from extending its business indefinitely or carrying out the purposes of its incorporation. It simply provides a fixed place where, for the purposes designated in the statute, those interested in the corporation, stockholders, creditors or otherwise, may seek for the necessary information which the statute states they are entitled to receive.

If the action of the directors here can be upheld, then the requirements in reference to filing annual reports are easy of evasion, and the task of those dealing with the corporation in obtaining the information to which they would be entitled would be more difficult and uncertain. The certificate filed at the organization of the company, as required by statute, clearly designated and made known to the public a specific place where reports were to be filed ; and it is more consistent with the language and object of the statute and more just, that the directors should be required to continue to file reports in the place designated in the certificate, than that those dealing with the corporation should be compelled to ascertain whether by resolution of the directors a change had been made, or to search in every county clerk's office in the State, to discover where, if at all, the financial condition of the company was stated.

An examination of prior as well as recent statutes relating to the different classes of corporations embodied in the corporation law of the State, will show that there is scarcely an exception wherein there is not a requirement that the certificate of incorporation shall state the location of the principal office of the company. These statutes, moreover, require that at that place many acts are to be performed, making it in the highest degree important that such place should be fixed and certain and not dependent upon facts which, in many instances, can never be absolutely known till judicially determined.

Thus in the case at bar, although we must assume from the finding of fact that New York city was the location of the principal business office, it appears that the factory of the corporation was at Chichester, Ulster county, the place designated in the certificate as the principal business office, and that a considerable part of its business continued to be transacted there ; and while the directors by resolution concluded to regard New York city as the place of the principal office, it is not evident to what extent the business done in the office here exceeded that done in the office at Chichester.

Without discussing or elaborating upon it, I think some weight should be attached to the consideration that it was recently deemed necessary to pass a statute enabling corporations to change their principal business office, which would not have been necessary if it could be done by resolution of a board of directors.

I have not overlooked the case of *Wallace* v. *Walsh* (125 N. Y.

26), principally relied on by the appellant; but it in no way seems to me to militate against the conclusion at which I have arrived. There the right of a corporation to change the number of its directors from twelve to nine for the purpose of filing a report was questioned, and the court held that such action could not be attacked collaterally, and upheld the filing of the report, the decision resting upon the conclusion that the duty of giving information imposed by the statute had been fully complied with. Whether the reports were filed as the result of the action of twelve or nine directors was immaterial, it appearing that the information was furnished by filing the report in the proper place. The purpose and intent of the section of the chapter which we have been discussing, however, requires reports to be filed in a certain known and definite place, and it cannot be concluded that the obligation thus imposed has been met by the filing of reports in some other place.

For the reasons stated I cannot concur in the views of the majority of the court, and dissent therefrom, being in favor of an affirmance of the judgment, with costs.

PATTERSON, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.